Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

March 31, 1999.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for defendant Anthony Marceca.

Ann Weismann, Patricia Russotto, Benjamin Lawsky, U.S. Department of Justice, Civil Division, Washington, DC, for Non-party Kenneth Bacon.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion [363] to Compel Further Testimony and Further Production of Documents from Kenneth Bacon and for Sanctions. Upon consideration of plaintiffs' motion, Bacon's and the U.S. Department of Defense's oppositions, and plaintiffs' replies thereto, the court will GRANT IN PART AND DENY IN PART plaintiffs' motion, as discussed and ordered below.

### I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

The instant dispute revolves around the deposition of Kenneth Bacon, Assistant Secretary of Defense for Public Affairs, U.S. Department of Defense. Bacon admits to

some involvement in the release of background security information of Linda Tripp to Jane Mayer of *The New Yorker* magazine. That publication later published an article on Tripp, revealing that she had not disclosed a prior arrest on her background security application. This court has already held that the circumstances surrounding the release of Tripp's information is discoverable because it may provide circumstantial evidence of a White House connection to an instance of misuse of government files, which pertains directly to the allegations made in plaintiffs' complaint. Thus, plaintiffs' legitimate purpose for the Bacon deposition is to establish circumstantial evidence relating to any potential White House connection to the release of Tripp's background security information.

Bacon's role in the release of this information is largely undisputed. On March 12, 1998, Mayer telephoned Bacon to ask about Tripp's disclosure, if any, of a prior arrest on her security clearance application. Bacon then had a discussion with his Principal Deputy, Clifford Bernath. At Bacon's direction, Bernath located Tripp's security application, determined that Tripp had not disclosed any prior arrest, and reported that information directly to Mayer on March 13, 1998. Both Bacon and Bernath, in their sworn testimony given under oath and under penalty of perjury, deny any White House involvement in the release of Tripp's security information.

Plaintiffs disagree with the implications of these undisputed facts in two primary ways. First, they claim that there was a White House link to the release of the Tripp information, which is the basis for Bacon's deposition. Second, and more importantly for the purposes of the pending motion, plaintiffs claim that the Department of Defense has attempted to cover up political motivations behind the release of Tripp's information. Plaintiffs' central theory in this regard is that the Secretary of Defense, William Cohen, attempted to dispel accusations of political involvement by emphasizing to the public that Bernath, who is not a political appointee, was the person who released Tripp's information to the media. Plaintiffs note that Secretary Cohen failed to mention that Bernath performed this task at the direction of Bacon, who is a political appointee. Based on this theory, plaintiffs seek to look into conversations between Bacon and Cohen regarding the alleged decision of the Department to inform the public about Bernath's, but not Bacon's, involvement in the Tripp release.

Plaintiffs ask this court to compel Bacon to take several actions. First, plaintiffs want answers to the following 22 questions:

1. What answer did Bacon tell Secretary of Defense William Cohen to give in an interview on CNN regarding the Tripp release?

2. What did Bacon tell Secretary Cohen in preparation for another television show in April 1998?

3. Did Bacon discuss with Secretary Cohen the legality or appropriateness of the release of Tripp's information, about the investigation of how the release occurred, or whether Secretary Cohen should publicly name only Bernath as the person who released the information?

4. Did Bacon discuss with Secretary Cohen whether the issue of Tripp's completion of her security application was a serious matter that needed to be investigated by the Department of Defense?

5. What did Bacon tell Secretary Cohen about the Tripp matter in preparation for another television interview?

6. Did Bacon tell Secretary Cohen the circumstances that led to the release of Tripp's background security information?

7. Did Bacon discuss with Secretary Cohen whether Bacon had instructed Bernath to release the Tripp information?

8. Did Bacon discuss with Secretary Cohen whether Bacon had knowledge that the release violated the Privacy Act.

9. What did Secretary Cohen do after Bacon told the Secretary that he should correct his statement made on a television show that mentioned only Bernath?

10. After Bacon told Secretary Cohen that he should correct the "misimpression" that the Secretary gave the public about Bernath's role in the release of the Tripp information, did the Secretary say that he should issue a correction?

11. What did Bernath write in a memorandum shown to Bacon and given to a Department of Defense press duty officer regarding how the Department press office should respond to questions about Mayer's article?

12. Does Bacon take responsibility for Bernath's release of Tripp's private information?

13. Did Bernath obtain the level of a political appointee?

14. What did Bacon discuss with President Clinton in 1995?

15. What "ruling" was made "after the review of Tripp's security form" that Bacon discussed with Dick Bridges, one of his coworkers?

16. What is Tripp's present employment status with the Department of Defense?

17. Why was Bernath's involvement in the release of the Tripp information revealed by Secretary Cohen when, according to Bacon, it is not necessary to give the public "all of the facts" now because the Department of Defense's Inspector General is still investigating the release?

18. What did Bacon say to Secretary Cohen's Chief of Staff about the Secretary's statement to the public that only mentioned Bernath as being responsible for the release?

19. Did Bacon discuss his involvement in the Tripp release with Secretary Cohen's Chief of Staff before Secretary Cohen made his statement on a television show?

20. What were the job positions and qualifications of the two persons who Bacon says were competing with Bernath for a higher paying job that Bacon ultimately gave to Bernath after the Tripp release?

21. Did anyone discuss with Bacon the likely result of the ongoing investigation of the release of Tripp's information?

22. Was Bacon's conduct regarding the release of Tripp's information inappropriate or illegal?

Second, plaintiffs want Bacon to be forced to perform another document search in response to plaintiffs' subpoena duces tecum. Third, plaintiffs ask that, after a new search, Bacon be forced to produce responsive, non-privileged documents to plaintiffs and to produce responsive, privileged documents to the court for an *in camera* inspection. Fourth, plaintiffs seek to compel Bacon to be subjected to further examination on the specifically enumerated questions, reasonable follow-up questions, and questions regarding Bacon's new search. Fifth, plaintiffs seek sanctions against Bacon's Department of Defense counsel (who was representing Bacon in his official capacity).

For the reasons given below, the court will grant in part and deny in part plaintiffs' motion to compel. Specifically, the court will deny plaintiffs' motion to compel Bacon to re-search for documents responsive to plaintiffs' subpoena duces tecum; deny plaintiffs' motion to compel further testimony on questions 4, 8, 14, 15, 16, 20, and 22; grant plaintiffs' motion to compel further testimony on questions 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 17, 18, 19, and 21; and deny plaintiffs' motion for sanctions.

II. *Plaintiffs' Motion to Compel Deposition Testimony*

A. *Enumerated Questions*

1. *Relevance*

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Consequently, the Court may only grant plaintiffs' motion to compel to the extent that plaintiffs seek answers to questions on issues that are relevant or that are reasonably calculated to lead to the discovery of admissible evidence. As discussed above, the court has already ruled that information surrounding the release of Tripp's background security information is discoverable in this case to the extent that the inquiries are reasonably calculated to lead to the discovery of a White House connection in the release. This point is the nexus between the Tripp matter and the plaintiffs' allegations in the pending case. Consequently, it is the standard plaintiffs

must meet when seeking to compel answers from Bacon. The court finds that questions 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 14 (regarding FBI files or the release of Tripp's security information), 15, 17, 18, 19, & 21 (to the extent a White House connection or lack thereof is involved as to the release of Tripp's security information) meet this FED. R.CIV.P. 26(b)(1)–based standard, while questions 4, 8, 16, 20, & 22 do not.

A majority of the questions to which plaintiffs seek to compel answers deal with plaintiffs' claims that the Department of Defense covered up (and continues to cover up) the circumstances surrounding and motivations for the release of Tripp's security clearance application information. The current issue is whether this line of questioning inquires into discoverable matter. The court finds that it does, and it therefore finds several of plaintiffs' unanswered questions to seek discoverable material.

The court has already held that any White House connection or lack thereof to the release of Tripp's security information is discoverable as potential circumstantial evidence of the misuse of the plaintiffs' files by the White House. Plaintiffs contend that the Department of Defense sought to (and still seeks to) cover up Bacon's involvement in this release. This cover-up, plaintiffs theorize, was done for political purposes, such that career government officials, as opposed to political appointees, would take the blame. Furthermore, plaintiffs claim that Department officials have attempted to make other public self-serving misstatements regarding the Tripp release.

The plaintiffs' suspicions are not baseless. First, the Secretary did point out on national television that a career government employee (Bernath) released the information, but the Secretary allegedly failed to disclose that the release was made at the behest of a political appointee—Bacon. Second, Colonel Dick Bridges, a Pentagon spokesman, also publicly stated that the person who released Tripp's background security information (Bernath) thought he was releasing only innocent information, explaining that the background form merely stated that Tripp had never been arrested. As deposition testimony in this case later showed, however, both Bacon and Bernath testified that they had both been told before the information was released that Tripp had a previous arrest. Bacon Depo. at 223; Bernath Depo. at 231–32. This sworn testimony is directly contrary to the earlier public statement of Colonel Bridges as to the Department's role in the release of Tripp's information. Thus, while this information by no means proves a cover-up, it does provide some factual predicate for plaintiffs' questions regarding the decision to name Bernath, but not Bacon, publicly.[1]

The issue becomes, then, whether questions geared toward a Department of Defense political cover-up are "reasonably calculated to lead to the discovery" of a White House connection to the release of Trip's security information. Again, the court has already held proof of such a connection to be discoverable as potential circumstantial evidence of the plaintiffs' allegation as to their FBI file misuse. The court finds that questions bearing upon any purported course of action to implicate Bernath in or shield Bacon from responsibility for the release of Tripp's security information are reasonably calculated to lead to the discovery of a White House connection (or lack thereof) in the

---

1. This is not the first evidence of potential misconduct on behalf of the Department of Defense as to the release of Tripp's background security information. On July 10, 1998, 186 F.R.D. 78, the court addressed the issue of document destruction by Bernath. Bernath admitted in his deposition that he deleted certain computer files from the hard drive of his computer. Bernath Depo. at 301. These deletions occurred after Bernath had allegedly requested a Pentagon inquiry to examine the propriety of his own actions in the release of Tripp's background security information. In directing the Department of Defense's Inspector General to examine Bernath's hard drive for potentially relevant but deleted documents, the court noted that "cause for concern should exist when an upper-level government employee completely deletes his hard drive when this hard drive may have information relevant to an on-going criminal investigation, let alone the instant case ... [I]t is highly unusual and suspect for such an action to have been undertaken by Bernath when matters relating to Tripp are being investigated by the Office of the Independent Counsel." *Alexander v. FBI*, Civ. No. 96–2123, Memorandum Opinion at 38, 186 F.R.D. at 96 (D.D.C. July 10, 1998).

matter. First, as noted above, the plaintiffs have some legitimate factual basis for their questions regarding the Department of Defense's course of action with regard to naming Bernath, but not Bacon, publicly. Second, assuming that plaintiffs correctly state the Department's actions and intentions, then plaintiffs must be entitled to probe whether a White House connection to the alleged cover-up exists. Thus, the White House connection to the release of Tripp's security information could have two potential relationships to the present case: first, whether the White House played a role in the release of Tripp's information to Mayer; or second, whether the White House played some role in the alleged cover-up of the political nature of the release of Tripp's security information. The latter avenue is the novel issue today. The court finds that the circumstances pertaining to any Department of Defense decision to implicate Bernath rather than Bacon for political purposes is discoverable. Simply put, if evidence of a politically based White House connection to the release of Tripp's security information is discoverable, then information tending to show a concealment of political motivation and actions of that same information-release must also be discoverable. As can be seen from the list given above, questions 1, 2, 3, 5, 6, 7, 9, 10, 11, 13, 17, 18, and 19 all seek information pertaining to this line of inquiry. Therefore, the court finds that these questions seek discoverable matter under FED.R.CIV.P. 26(b)(1).

■ With the relevance of these questions decided, the court is left with questions 4, 8, 12, 13, 14, 15, 16, 20, and 21. The court finds questions 4, 8, 16, 20, and 22 to be outside the scope of discovery in this case. Question 4 asks about whether Secretary Cohen believed Tripp's security application and the release of certain information it contained was "serious." Cohen's belief, or any discussion about his belief, has no bearing upon any potential White House connection to the release of the information. Therefore, it is not discoverable. Question 8 inquires into whether Bacon discussed with Secretary Cohen whether Bacon had knowledge that his own actions violated the Privacy Act. This question seeks irrelevant matter because it is not reasonably calculated to lead to the dis-

covery of any evidence regarding a White House connection to the release of Tripp's security information or a political cover-up regarding that release. What Bacon knew about the Privacy Act, no matter the answer, does not bear upon any White House connection. Question 16 inquires into Tripp's current employment status with the Department of Defense. There is no reason to believe that this question bears upon a White House connection to the release of Tripp's security information. Therefore, this question seeks non-discoverable matter. Question 20 asks about the qualifications of two people that competed for a job Bernath was given by Bacon at sometime after the release of Tripp's security information. The plaintiffs opine that Bacon had some sort of ulterior motive in giving Bernath the job, and they further claim that this motive bears upon plaintiffs' case. Seeing no relevance to this question as to a White House connection to the release of Tripp's security information, the court finds this question to seek irrelevant matter. Question 22 seeks to elicit testimony from Bacon as to whether he believes his role in the release of Tripp's information was inappropriate or illegal, under the same reasoning as Question 8. Bacon's personal feelings do not shed any light upon whether there is or is not a White House connection to the release of Tripp's security information. Therefore, this questions seeks information outside the realm of discovery in this case.

In contrast, questions 12, 14, 15, and 21 all seek discoverable matter. The relevance of these questions, however, is based on reasoning different from the plaintiffs' claims of political cover-up. These questions are reasonably calculated to lead to the discovery of whether the White House played a role in the release of Tripp's security information, but these questions do so directly. Because the court has already ruled by prior memorandum opinion that this line of inquiry is discoverable, these questions are therefore proper. Question 12 asks whether Bacon takes responsibility for the release of Tripp's security information. If he does, this would be evidence that favors the defendants (in that it would cut against the argument for a White House connection); if he does not,

then it may cut against the defendants. Either way, the testimony may reasonably bear upon a White House connection or lack thereof to the Tripp release. Question 14 asks what Bacon discussed with President Clinton in a 1995 conversation. This question is clearly relevant to the extent they talked about the FBI files at issue in this case or any information concerning Tripp (although, given the time frame, it would be highly unlikely). However, because Bacon has already stated that he never discussed either of these matters with "anyone at the White House," the question has already been answered in relevant part. Therefore, the court will not compel Bacon to answer this question. Likewise, question 15 also seeks to compel testimony that has already been answered elsewhere in Bacon's deposition. Plaintiffs sought to find out about a certain "ruling" that had been made by the Department of Defense regarding Tripp. This ruling was simply that Tripp would keep her security clearance. Plaintiffs clearly knew what this ruling was, given their introduction of a press briefing given by Bacon announcing the ruling as a deposition exhibit. Therefore, the court will not compel testimony on this question. Finally, the court finds question 21 to seek discoverable material. This question inquires into whether anyone told Bacon what the "likely result" would be of the ongoing investigation at the Department of Defense as to the Tripp release. The question seeks discoverable matter to the extent any information told to Bacon regarding a White House connection, or lack thereof, exists as to the release of the Tripp information. Therefore, this question is relevant-to the extent described by the court-and shall be answered by Bacon. I n summary, the court finds that questions 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 14 (regarding FBI files or Tripp), 15, 17, 18, 19, and 21 (to the extent it involves a White House connection to the release of Tripp's security information) all inquire into discoverable matters. The court will not, however, compel answers to questions 14 and 15, as they have already been asked and answered by Bacon elsewhere.

The court rejects plaintiffs' motion to compel answers to 4, 8, 16, 20, and 22 on the basis of relevance.

### 2. Pending Privilege Claims

Because the court has found that questions 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 17, 18, 19, and 21 inquire into discoverable matter and have not already been answered, answers to each of these questions must be compelled unless the court sustains a pending objection. The court rejects these privilege claims and will compel Bacon to answer all of these questions.

During Bacon's deposition, the Department of Defense objected and instructed Bacon not to answer various questions on two grounds. First, the Department instructed Bacon not to answer questions 5, 6, 7, 9, 10, 12, 13, 17, 18, 19, and 21 solely on the grounds of *Touhy* objections.[2] As the Department of Defense notes, however, the court has now held that the Touhy doctrine does not apply to questions such as these under the circumstances of this deposition. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 33–35, 186 F.R.D. at 95–96 (D.D.C. July 10, 1998). Therefore, all objections based on the *Touhy* doctrine are rejected. Because there are no other objections pending as to these questions, the court will compel the answers plaintiffs seek in this regard.

Deliberative process privilege objections are pending, however, for questions 1, 2, 3, and 11. The deliberative process privilege is "predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fish bowl." *Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C.Cir.1990) (quotation omitted). The purpose of the privilege is threefold:

> First, the privilege protects candid discussions within an agency. Second, it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy. Third, it protects the integrity of an agency's de-

---

**2.** The court uses this term as it arises from *United States ex rel Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

cision; the public should not judge officials based on information they considered prior to issuing their final decisions.

*Judicial Watch v. Clinton*, 880 F.Supp. 1, 12 (D.D.C.1995), *aff'd*, 76 F.3d 1232 (D.C.Cir. 1996).

■ To prove the applicability of the deliberative process privilege, an agency must show that the information seeking to be inquired about is predecisional and deliberative. *Access Reports v. Department of Justice*, 926 F.2d 1192, 1194 (D.C.Cir.1991). Plaintiffs do not dispute that the answers they seek to compel inquire into matters that meet both of these criteria. Instead, plaintiffs rely upon what they characterize as the "government misconduct" exception to the deliberative process privilege.

Plaintiffs point to language from *In re Sealed Case*, 121 F.3d 729, 746 (D.C.Cir. 1997), as their primary basis for the misconduct exception. In that case, the Court of Appeals noted that "where there is reason to believe that the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal deliberations in this context does not serve 'the public's interest in honest, effective government.' " *Id.* at 738 (quoting *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir.1995)). The Court of Appeals also stated that "the [deliberative process privilege] disappears altogether when there is any reason to believe government misconduct occurred." *Id.* at 746. Plaintiffs rely on a litany of allegations of government misconduct as to the mishandling of plaintiffs' FBI files and the release of Tripp's security information to form the factual predicate for the misconduct exception. Plaintiffs specifically point to public statements made by high government officials referring to the handling of plaintiffs' FBI files as irresponsible and inappropriate, Bernath's destruction of some of his computer files, and plaintiffs' theory regarding the Department of Defense's so-called political cover-up of the political motivations of the release of Tripp's security information.

The Department of Defense rebuts plaintiffs' characterizations regarding the deliberative process privilege on two grounds. First, the Department argues that an allegation of governmental misconduct is simply an additional factor to be considered when weighing the plaintiffs' interest in the deliberative information versus the public's interest in the effectiveness of the government's decisionmaking process. The government cites a "close reading" of *In re Sealed Case* and *Hinckley v. United States*, 140 F.3d 277, 286–86 (D.C.Cir.1998), for this proposition. Second, the Department argues that there is no reason to believe that inquiry into the deliberative matter sought by plaintiffs will shed light on any governmental misconduct. The heart of the government's argument in this regard appears to be that because, in their view, there is no evidence of a White House link to the release of Tripp's security information, then there is no nexus between any Department misconduct that may be shown and the plaintiffs' allegations as to the FBI files matter. Based on these two arguments, the government contends that the misconduct exception to the deliberative process privilege is inapplicable.

■ The Department of Defense's legal argument-that a "close reading" of the caselaw shows that a balancing test must still be undertaken, even in the face of identifiable government misconduct-is incorrect. The Court of Appeals has made clear that the deliberate process privilege "disappears altogether when there is *any* reason to believe government misconduct occurred." *See In re Sealed Case*, 121 F.3d at 746 (emphasis added); *see also id.* at 738 ("[W]here there is reason to believe the [deliberative information sought] may shed light on government misconduct, 'the privilege is routinely denied.' " (quoting *Texaco Puerto Rico*, 60 F.3d at 885)). These pronouncements of the law make perfect sense because, in terms of a balancing test, the public value of protecting identifiable government misconduct is negligible. *See id.* at 738. Thus, if there is "any reason" to believe the information sought may shed light on government misconduct, public policy (as embodied by the law) demands that the misconduct not be shielded merely because it happens to be predecision-

al and deliberative. Therefore, the Department of Defense's argument that the court must undertake a balancing of the plaintiffs' versus the public's interest in terms of protecting alleged misconduct must be rejected.

■ The cases cited by the government support the court's holding on this point. In *In re Sealed Case*, the Court of Appeals explicitly refuted the argument put forward today by the Department. In that case, the court contrasted the effect of allegations of government misconduct in the context of the deliberative process privilege versus the presidential communications privilege. In doing so, the court stated that a showing of "need"—which is what the balancing test discussed by the government is geared toward—is not necessary in terms of overcoming a deliberative process privilege claim when "there is any reason to believe government misconduct occurred." *Id.* at 746. The court contrasted the presidential communications privilege on this point when it stated: "On the other hand, a party seeking to overcome the presidential communications privilege seemingly must always provide a focused demonstration of need, even where there are allegations of misconduct by high-level officials." *Id.* For the Department to suggest that a "close reading" of this passage states the rule that "an allegation of misconduct is merely a factor to be taken into account in the required balancing of interests," *see* Department of Defense's Opposition at 31, is simply incorrect. Any reasonable basis for an allegation of relevant government misconduct by the Department of Defense abrogates the need for the balancing test, as the plaintiffs' need would be weighed against the public's interest in shielding potential government misconduct. Because the latter has no value, a showing of need in this circumstance is not necessary.

Perhaps equally incorrect is the Department's statement that in *Hinckley* "the D.C. Circuit affirmed that [an] allegation of misconduct was only a factor to be weighed in balancing the plaintiffs' need for materials falling within the deliberative process privilege." Department of Defense's Opposition at 31 (citing *Hinckley*, 140 F.3d at 285–86).

This argument misstates the law for two reasons. First, as shown above, there never was such an original pronouncement of law as the Department of Defense suggests, so the notion that *Hinckley* affirmed this hypothetical pronouncement is wrong. Second, *Hinckley's* misconduct-exception analysis is completely devoid of any balancing-test analysis, which is precisely the point for which the government cites the case.

In *Hinckley*, John Hinckley, Jr., who was acquitted based on insanity after attempting to assassinate then-President Reagan, sought to receive a conditional release from St. Elizabeth's Hospital. Hinckley asked for discovery regarding the discussions that took place between members of the hospital's review board, which had denied his application. Hinckley asserted that his attempt to access these discussions fell within the misconduct exception because he had alleged that the review board "had improper motivations when it declined him a conditional release." *Hinckley*, 140 F.3d at 285. Hinckley's sole basis for these allegations of "improper motivations" was that his personal treatment team at the hospital had unanimously recommended his conditional release to the review board, but the review board did not follow this recommendation. The court of appeals rejected Hinckley's argument for two reasons, neither of which include any balancing of interests, as the government suggests this case "affirms." First, the court held that disagreement within a government entity does not, in and of itself, establish any colorable claim of misconduct. *Id.* Indeed, it is this type of intra-agency disagreement that the deliberative process privilege is meant to protect. *Id.* Second, the court found that the alleged intra-agency disagreement did not even suggest that any improper motivations were at issue. *Id.* at 286. Therefore, the Department of Defense's reliance on *Hinckley* is misplaced.

Like its legal argument, the Department of Defense's factual argument-that there is no reason to believe any government misconduct occurred-must be rejected. The court has already stated on previous occasions that the circumstances surrounding the release of Tripp's security clearance information is dis-

coverable in this matter to the extent it would be reasonably calculated to lead to the discovery of a White House political connection. Taking this premise one step further, covering up the political motivation for the release of Tripp's information must also be discoverable, since it would be some evidence of a political link to the release. With these principles in mind, the court must compel answers to the questions that the Department of Defense claims deliberative process privilege over if there is "any reason to believe that the [information] sought may shed light on government misconduct." *Hinckley,* 140 F.3d at 285; *In re Sealed Case,* 121 F.3d at 738. No one disputes that releasing Tripp's background security information qualifies as misconduct. A White House connection to that misconduct, which is the pertinent nexus to the plaintiffs' allegations, would be misconduct on its part as well. Providing political cover for those involved in the misconduct would also, in itself, be misconduct. Thus, sound theories of misconduct being present, the issue becomes whether there is *any* reason to believe that compelling the testimony the plaintiffs seek would shed light on this misconduct.

As discussed in connection with the relevance of plaintiffs' questions, the court finds that there is some reason to believe that this testimony may shed light on potential government misconduct. All of the questions that the Department of Defense claims privilege over inquire into conversations between Bacon and Secretary Cohen about the decision to name Bernath, a career government official, publicly for the release of Tripp's security information but to omit any role that Bacon, a political appointee, may have had. It is reasonable to believe that conversations between Bacon and Secretary Cohen may shed light on the cover-up alleged by plaintiffs. First, since Bacon himself was directly involved in the release of the Tripp information, his statements as to what the Secretary should say to the public could shed light on any potential political cover-up. Second, because Bacon is also the chief public affairs officer for the Department of Defense, it would be reasonable to believe that conversations between someone in his capacity and the Secretary of Defense would shed some light on the reasoning behind naming Bernath but not Bacon. Therefore, this court finds that there is some reasonable basis for believing that compelling testimony on these questions may shed some light on potential government misconduct. Of course, plaintiffs have not yet proven such allegations, but given a reasonable basis for their allegations as to the misconduct exception to the deliberative process privilege, the privilege cannot allow such discussions to be shielded because such protection would serve no public interest. The court will therefore compel answers to these questions and reject the pending deliberative process privilege claims.

Although the court has ordered on other occasions in this case certain compelled questions to be answers by written interrogatory, it does not believe that such an approach would be appropriate in this instance. The subject matter to be inquired into simply does not lend itself to effective examination by written interrogatory. Therefore, the court will compel further oral testimony from Bacon on the certain questions ordered by the court in this opinion.

### B. *Follow-up Questions*

Plaintiffs also seek to compel reasonable follow-up questions related to those inquiries that were not answered by Bacon at this deposition. The court will grant plaintiffs' request in this regard, but only on the questions the court compels testimony on today. Plaintiffs will not be afforded a "second bite at the apple" as if this further examination was an entirely new deposition. Plaintiffs shall limit their questions to the questions compelled by the court today and questions reasonably related to the subject matter these questions involve. The court is not simply granting plaintiffs an open re-deposition, and the plaintiffs have not even attempted to discuss the proper factors governing leave for such a re-deposition under FED.R.CIV.P. 30(a)(2)(B) and 26(b)(2). Subject to these provisions, Bacon shall submit to oral examination as ordered below.

### III. *Plaintiffs' Motion to Compel Document Production*

Plaintiffs seek to compel Bacon to research for government documents responsive

to plaintiffs' subpoena duces tecum; produce all relevant, non-privileged documents to plaintiffs; and submit all relevant, privileged documents to the court for an *in camera* inspection. The plaintiffs also ask the court to compel Bacon to answer further questions about this re-search.

The court will deny plaintiffs' requests as moot. Plaintiffs have sought to compel the same material from the Department of Defense. Any documents in Bacon's possession, custody, or control, wherever such documents may be, are a subset of the Department of Defense's documents. Thus, plaintiffs' motion to compel a research for these documents is subsumed by the same motion as to the Department of Defense. Because the court has decided, by separate order this date, plaintiffs' motion to compel the Department of Defense in this regard, plaintiffs' motion to compel the same material from Bacon is moot. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order (D.D.C. Mar. 31, 1999). Consequently, plaintiffs' request to compel further testimony from Bacon on this re-search is also denied.

IV. *Sanctions*

Plaintiffs seek sanctions against Bacon's Department of Defense counsel because, in plaintiffs' view, the objections raised at Bacon's deposition are not substantially justified and an award of sanctions is just. *See* FED. R.CIV.P. 37(a)(4). The court will deny plaintiffs' request for sanctions. Rule 37 and its sanctions provision apply only to parties to the case. *See* FED.R.CIV.P. 37; *In re Exxon Valdez*, 142 F.R.D. at 385.

Even if the court were to liberally construe plaintiffs' motion for sanctions as a motion under FED.R.CIV.P. 45, the appropriate vehicle for sanctions against a non-party in this situation, the only analog under that rule would be the contempt provisions of FED. R.CIV.P. 45(e). That provision does not apply because the Department of Defense timely objected to plaintiffs' requests. *See In re Exxon Valdez*, 142 F.R.D. at 385. These objections provide an "adequate excuse" for not answering plaintiffs' questions and document requests. Therefore, the court will deny plaintiffs' motion for sanctions.

V. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that Plaintiffs' Motion [363] to Compel Further Testimony and Further Production of Documents from Kenneth Bacon and for Sanctions is GRANTED IN PART AND DENIED IN PART. In this regard, it is FURTHER ORDERED that:

(a) Plaintiffs' motion to compel Bacon to re-search for documents responsive to plaintiffs' subpoena duces tecum is DENIED.

(b) Plaintiffs' motion to compel further testimony on questions 4, 8, 14, 15, 16, 20, and 22 is DENIED.

(c) Plaintiffs' motion to compel further testimony on questions 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 17, 18, 19, and 21 is GRANTED. Bacon shall submit to further deposition testimony on these questions and reasonable follow-up questions in this regard. Plaintiffs may not, however, inquire into matters beyond this scope without obtaining leave of court for a re-deposition of Bacon.

(d) Plaintiffs' motion for sanctions is DENIED.

SO ORDERED.