310 F.3d 771
 Neil JOHNSON, Appellant,
v.
EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS and Bonnie L. Gay, Acting Assistant Director, Executive Office for United States Attorneys, Appellees.
 No. 01-5206.
 United States Court of Appeals, District of Columbia Circuit.
 Argued September 5, 2002.
 Decided November 22, 2002.
 
 Appeal from the United States District Court for the District of Columbia (No. 98cv00729).
 Kristen Flynn, appointed by the court, argued the cause as amicus curiae on behalf of the appellant. With her on the briefs was William B. Schultz.
 Neil Johnson filed briefs pro se.
 Michael J. Ryan, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.
 Before: GINSBURG, Chief Judge, and SENTELLE and RANDOLPH, Circuit Judges.
 SENTELLE, Circuit Judge:
 Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000), Neil Johnson seeks to compel the release of documents pertaining to his criminal conviction withheld by the Executive Office for United States Attorneys (EOUSA). EOUSA withheld, in whole or in part, a number of records under exemption 7(C), which permits the agency to do so to protect the privacy interests of other parties named in the record. § 552(b)(7)(C). Johnson argues that EOUSA is required to take steps to determine whether these parties are alive or dead in order to claim this exemption properly, and to provide a more complete explanation for the nonsegregability of documents withheld in full. The district court granted the government's motion for summary judgment on the merits, upholding the agency's invocation of the FOIA exemptions. Because we find that the agency took sufficient steps to investigate information affecting the privacy interests of the individuals, and because the agency's affidavits and the district court's finding on the issue of segregability satisfy the requirements of 552(b), we affirm the district court's grant of summary judgment. Johnson also seeks reinstatement of his claim for constitutional damages against EOUSA attorney Bonnie Gay, which the district court dismissed for failure to state a claim. Because the district court properly concluded that FOIA precludes courts from fashioning a damage remedy under Bivens, we affirm.
 I. Background
 In July of 1996, Appellant, Neil Johnson, then incarcerated, submitted a request under FOIA, § 552, to EOUSA, for all records pertaining to himself. EOUSA received this request on July 30, 1996. In response to a request from EOUSA, Johnson stated that his records were located in the United States Attorney's Office (USAO) for the District of Connecticut. On September 13, EOUSA informed him that his request was complete and contacted the United States Attorney's Office in Connecticut. On April 24, 1997, EOUSA informed Johnson through a letter from Bonnie Gay, an EOUSA attorney with responsibilities for FOIA, that the records he requested totaled over 6,000 pages of material and that a $250.00 deposit would be needed before duplication could begin. In response, Johnson sent a request for a verification of the volume of his records and indicated that he did not wish to receive any trial transcripts. Before EOUSA responded to this request, Johnson sent a money order for $250.00. On August 26, EOUSA informed him that his money order had been received, that it had received two boxes of responsive documents from the Connecticut USAO, and that he would be refunded any difference between actual costs and the advance fee.
 Johnson heard nothing further from EOUSA, even after sending a letter in late November 1997, informing EOUSA of his plan to seek legal redress if he did not receive at least some of the requested documents within fourteen days. True to his word, Johnson filed a complaint on March 23, 1998, in the United States District Court for the District of Columbia against EOUSA and Bonnie Gay, in her individual and official capacities, seeking release of the requested documents, a declaration that the defendants' actions violated his constitutional rights, compensatory and punitive damages, and costs. During May 1998, EOUSA consulted with the FBI on the release of twenty-five pages of documents. The FBI withheld seven of those pages in full. On July 9, 1998, EOUSA made a partial release of the documents. At the same time, it informed Johnson that he would be reimbursed the $250.00 and that some of the records he requested were being withheld pursuant to FOIA exemptions 3, 5, 7(C), and 7(D), 5 U.S.C. § 552(b)(3), (b)(5), (b)(7)(C), and (b)(7)(D), and provided him with a Vaughn index. See Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C.Cir.1973). On the same day, EOUSA referred 338 pages to the United States Customs Service, the Drug Enforcement Agency, and the Criminal Division of the Department of Justice for review and direct response. EOUSA mailed Johnson a refund of $250.00 on January 4, 2000.
 
 
 1
 Johnson first informed EOUSA of the possible deaths of two persons identified in some of the withheld documents, Carlos Jacaman and Raul Rivera, in his July 10, 2000 opposition to EOUSA's motion for summary judgment. At that point Teresa Davis, another EOUSA attorney, attempted to confirm the status of Jacaman and Rivera by contacting state and federal probation offices in Connecticut, at Johnson's suggestion, as well as the United States Customs Service and the Social Security Administration. These attempts were not ultimately successful, and to date, neither EOUSA nor Johnson has been able to locate the social security numbers of either Jacaman or Rivera or to confirm if either is still alive.
 
 
 2
 On May 4, 2000, the district court granted the government's motion to dismiss the complaint against Bonnie Gay for lack of proper service and failure to state a claim. Johnson v. EOUSA, No. 98-729, slip op. (D.D.C.). Johnson filed a notice of appeal from that ruling, but decided it was premature, and this Court dismissed that appeal for lack of prosecution on October 25, 2000. Johnson v. EOUSA, No. 00-5229 (D.C.Cir.2000). On April 2, 2001, the district court granted the government's motion for summary judgment on the merits, Johnson v. EOUSA, No. 98-729, slip op. (D.D.C.), first noting that several of Johnson's arguments were mooted by the return of his $250.00, the release of his presentence report and the response of both sides to summary judgment motions not correctly received by the parties. After noting that Johnson had not challenged the withholding of documents under exemption 7(D), the district court held that EOUSA's withholding of documents both as non-responsive to appellant's request and under FOIA exemptions 3, 5 and 7(C) was proper. Finally, the district court ruled that EOUSA had performed an adequate segregability analysis to satisfy the requirements of § 552(b). The appellant appealed from the district court's grant of summary judgment in favor of EOUSA, and from the district court's dismissal of the complaint against Bonnie Gay.
 
 II. Analysis
 
 Grant of Summary Judgment for EOUSA
 
 
 3
 This Court reviews the district court's grant of summary judgment de novo. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 889 (D.C.Cir. 1995). De novo review of an agency's compliance with FOIA requires this Court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested ... are exempt from disclosure under the FOIA." Summers v. DOJ, 140 F.3d 1077, 1080 (D.C.Cir. 1998). An agency may meet this burden by providing the requester with a Vaughn index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance. See id. In this case, EOUSA provided a Vaughn index which stated in some detail the documents withheld, and the various exemptions on which it relied. Johnson's complaint is primarily focused on the adequacy of EOUSA's reliance on FOIA exemption 7(C), which permits the agency to withhold information contained in a law enforcement record that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C).
 
 
 4
 Johnson challenges the agency's contention that the privacy interests of other persons named in the records he requested compel the withholding of those records. He argues that because the agency must balance the privacy interests of individuals named in the records with the public interest in their release when deciding whether exemption 7(C) is applicable, the agency was required to take steps to determine whether the privacy interests of those individuals had been diminished by their deaths. In his opposition to EOUSA's motion for summary judgment, Johnson stated that he had personal knowledge that at least two persons named in his records, Carlos Jacaman and Raul Rivera, had been suffering from the AIDS virus prior to his 1994 trial, and therefore might have been dead when EOUSA claimed the 7(C) exemption based at least in part on their privacy interests.
 
 
 5
 In response to this information, EOUSA attorney Teresa Davis took actions to verify the status of Jacaman and Rivera. In her search concerning Jacaman, she contacted the U.S. Customs Office in Connecticut, where a customs investigator directed her to the Customs Headquarters in Washington, D.C., which maintains informant files. In turn, she contacted the D.C. office, which informed her that the Social Security Administration (SSA) could provide her with the information she sought. She called the SSA, identified herself as an attorney with the Department of Justice and was told that the SSA could not retrieve information regarding a person's status unless she provided a social security number, and that even if she had the number, and regardless of the official nature of her inquiry, she would probably not be provided with that information. She also searched for Jacaman's social security number and could not locate it. At Johnson's suggestion, Davis contacted the District of Connecticut United States Probation Office, in order to try and locate Rivera. She was informed that he was no longer under their supervision, and they had no record of his whereabouts. She also contacted the State of Connecticut Probation Office, and was met with the same response. Despite the efforts of Davis, EOUSA was unable to verify the status of either Jacaman or Rivera.
 
 
 6
 Johnson claims that the actions Davis took do not meet the "basic steps" required of an agency withholding information based on an exemption 7(C) privacy interest, under the rule of Schrecker v. DOJ, 254 F.3d 162, 167 (D.C.Cir.2001). In Schrecker, this Court recognized that the death of an individual whose privacy interest provides the rationale for a 7(C) FOIA exemption is a relevant factor in the balancing in which the agency engages when it determines whether to withhold or release the material. Id. at 166-67. However, the Court refrained from establishing specific steps that an agency must follow to establish an individual's status before proceeding to balance the interests, finding simply that
 
 
 7
 Without confirmation that the Government took certain basic steps to ascertain whether an individual was dead or alive, we are unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue.
 
 
 8
 Id. at 167.
 
 
 9
 That is not the situation before us. The record shows, and no one disputes, that once Davis and EOUSA became aware of the possibility that Jacaman and Rivera might be dead, Davis took a number of steps to determine their status, albeit without success. The record documents these efforts in the form of Davis's affidavit. Therefore, because we find that EOUSA's efforts to determine whether Raul Rivera and Carlos Jacaman were alive or dead were sufficient to meet its obligation to take "basic steps" to investigate information that could affect the privacy interests at stake, we affirm the district court's grant of summary judgment in favor of EOUSA regarding this challenge to EOUSA's reliance on exemption 7(C). We will not attempt to establish a bright-line set of steps for an agency to take in this situation. FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch.
 
 
 10
 In addition, we find that the government's affidavits and the district court's ruling on the issue of segregability satisfy the requirements of 5 U.S.C. § 552(b) and the precedent of this circuit. Johnson claims that the Vaughn index EOUSA provided offered insufficient justification for its claim that none of the withheld documents could reasonably be segregated for release. Johnson furthers argues that the affidavits of two EOUSA attorneys, Gay and Davis, contained only insufficient, conclusory statements on the segregability of these documents, and the district court erred when it did not make specific findings on the segregability of these documents. We disagree.
 
 
 11
 FOIA § 552(b) requires that even if some materials from the requested record are exempt from disclosure, any "reasonably segregable" information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C.Cir.1977); see also Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1028 (D.C.Cir. 1999). In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability. Mead Data, 566 F.2d at 261. However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed. Id.
 
 
 12
 Here, EOUSA provided Johnson with a comprehensive Vaughn index, describing each document withheld, as well as the exemption under which it was withheld. In addition, after this Court's decision in Trans-Pacific, Davis submitted a supplemental affidavit in order to further address the issue of segregability. In that statement, Davis explained that she personally conducted a line-by-line review of each document withheld in full and determined that "no documents contained releasable information which could be reasonably segregated from the nonreleasable portions." The combination of the Vaughn index and the affidavits of Gay and Davis are sufficient to fulfill the agency's obligation to show with "reasonable specificity" why a document cannot be further segregated. See Armstrong v. Executive Office of the President, 97 F.3d 575, 578-579 (D.C.Cir.1996).
 
 
 13
 In addition, the district court, citing this Court's decision in Trans-Pacific, fulfilled its obligation to make a specific finding on the issue of segregability. In Trans-Pacific, we held that a district court has the obligation to consider the segregability issue sua sponte, regardless of whether it has been raised by the parties, noting that we had many times remanded in cases where the district court had failed to rule on segregability. 177 F.3d at 1028.
 
 
 14
 When the district court in this case considered the issue of segregability, it stated the following in its opinion: On review of the Vaughn Index, the various Declarations, and Plaintiff's objections, the Court is satisfied that the Defendant conducted an appropriate search of the records in which references to Plaintiff are likely to exist and that all relevant documents have been produced, with the exception of segregable portions that are exempt from disclosure.
 
 
 15
 Johnson v. EOUSA, No. 98-729, slip op. at 11 (D.D.C. April 2, 2001).
 
 
 16
 In two other instances in the course of the opinion, the district court found specifically that indexed documents were properly withheld when they were described as nonsegregable, and accepted Davis's conclusion as to the nonsegregability of portions of other documents. Because we perceive no error in the findings of the district court that the affidavits of Davis and Gay are sufficient to meet the segregability requirements of § 552(b) and our previous cases, we affirm the district court's grant of summary judgment.
 
 
 17
 
 Dismissal of the Complaint Against Bonnie Gay for Failure to State a Claim
 
 
 
 18
 Turning to the district court's dismissal of the claim against Bonnie Gay, we begin by noting that this Court reviews de novo the dismissal of a complaint for failure to state a claim, accepting the plaintiff's factual allegations as true and drawing all inferences in the plaintiff's favor. Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 580 (D.C.Cir.2002). Johnson's complaint attempted to state a constitutional claim for damages against Gay, alleging that her mishandling of the FOIA request violated his constitutional right to due process under the Fifth Amendment. Johnson argues that this violation demands the implementation of a Bivens-type remedy. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). It is clear that courts are precluded from granting such relief if the statute at issue provides a "comprehensive system to administer public rights." Spagnola v. Mathis, 859 F.2d 223, 228 (D.C.Cir.1988) (en banc). The district court refused to fashion such a remedy for Johnson because it found that FOIA represents just such a comprehensive scheme, which provides requesters with the potential for injunctive relief only, either to enjoin the withholding of documents or to compel production of agency records. See 5 U.S.C. § 552 (a)(4)(B); Johnson v. EOUSA, No. 98-729, slip op. at 5-6 (D.D.C. May 4, 2000). Because we agree with the district court that the comprehensiveness of FOIA precludes the creation of a Bivens remedy, and because Johnson's claims are not otherwise actionable, we affirm the district court's dismissal of the claim against Gay.
 
 III. Conclusion
 
 19
 For the foregoing reasons, we conclude that the steps taken by EOUSA to determine the status of Jacaman and Rivera were sufficient to meet its obligation to investigate information that could affect the privacy interest at stake, and that the government's affidavits and the district court's findings on segregability satisfy the requirements of FOIA. For those reasons, we affirm the district court's grant of summary judgment in favor of EOUSA regarding the challenge to its reliance on exemption 7(C). Finally, because FOIA embodies the type of statutory scheme that precludes courts from fashioning damage remedies under Bivens, we affirm the district court's dismissal of Johnson's constitutional claim.