Alberto GUTMAN, Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,
Defendant.

No. CIV.A.02–0872 RMU.

United States District Court,
District of Columbia.

Jan. 7, 2003.

Alberto Gutman, Miami, FL, Pro se plaintiff.

Robert Leidenheimer, Jr., Asst. U.S. Atty., Washington, DC, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

#### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### I. INTRODUCTION

The Freedom of Information Act ("FOIA"), as amended, 5 U.S.C. § 552, provides the public the right to access federal agency records, except when records are protected from public disclosure. The goal of achieving an informed citizenry through disclosure of agency records is counterpoised against other vital societal aims opposing disclosure. *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). Accordingly, this court weighs in the balance what the public needs to know and what the government need not disclose.

Alberto Gutman ("the plaintiff") brings this FOIA action against the Department

of Justice ("the defendant"). After being convicted for conspiracy to commit Medicare fraud, the plaintiff submitted a FOIA request to the defendant seeking disclosure of all documents pertaining to the plaintiff, and specifically any documents that make the plaintiff the subject of a law-enforcement inquiry or investigation. The defendant now moves for summary judgment on all the requested records withheld or redacted pursuant to the privilege and confidentiality protections of FOIA Exemptions 5 and 7(C). Upon consideration of the parties' submissions, the relevant law and the record of this case, the court grants the defendant's motion for summary judgment.

## II. BACKGROUND

The plaintiff is a former Florida State senator who pled guilty to conspiracy to commit Medicare fraud and was sentenced to a 60–month term of imprisonment.[1] Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 1. While incarcerated, the plaintiff submitted a FOIA request to four of the defendant's divisions, including the Executive Office for United States Attorneys ("EOUSA") (collectively, "the divisions"). Compl. ¶ 2. The plaintiff requested copies of materials that either mention the plaintiff or subject him to government inquiry or investigation. Id.

The defendant's Office of Information and Privacy ("OIP") processed the plaintiff's FOIA request. Id. ¶ 4. OIP is responsible for searching for and reviewing records within the defendant's senior leadership divisions, which include the divisions to which the plaintiff submitted his FOIA request. Def.'s Mot. at 2. OIP searched for records and uncovered three documents, totaling eleven pages, relating to the plaintiff's FOIA request. Compl. ¶ 4. After reviewing the documents, OIP determined that because the documents originated in EOUSA, and in accordance with Department of Justice regulations, 28 C.F.R. § 16.4(c)(2), referral of the documents to EOUSA for processing was necessary. Def.'s Mot. Ex. B ¶ 6. After processing all three documents, EOUSA released in part, released in full, or withheld in full various pages of the three documents. Id. at 2, Ex. B.

The first document released by the defendant is a revised six-page memorandum dated January 9, 1997 that concerns the "un-recusal" of the United States Attorney's Office for the Southern District of Florida from the plaintiff's criminal investigation and prosecution. Id.; Pl.'s Opp'n to Def.'s Mot.. ("Pl.'s Opp'n") at 7. Pursuant to Exemption 5, the defendant withheld in part one page and withheld in full three pages of this document to protect its deliberative process. Def.'s Mot. at 2.

The second document comprises two pages and is an "urgent" report advising the Attorney General that the United States had appealed a magistrate judge's bond determination releasing the plaintiff. Id.; Pl.'s Opp'n at 5–8. Pursuant to Exemptions 5 and 7(C), the defendant withheld in part one page of this document. Id. Specifically, the defendant redacted certain portions pursuant to the attorney work-product privilege under Exemption 5. Def.'s Mot. at 3; Pl.'s Opp'n at 7–8. The defendant also redacted home telephone and pager numbers under Exemption 7 to protect the personal privacy of certain government attorneys.[2] Def.'s Mot. at 2–3; Pl.'s Opp'n at 5–6.

---

1. The submissions do not clarify which court sentenced the plaintiff, although it appears to be a federal district court located in the State of Florida.

2. Since the defendant redacted only the home telephone and pager numbers of the government attorneys involved, the plaintiff concedes that the defendant's application of Ex-

The third document is a three-page "urgent" report advising the Attorney General that the plaintiff was sentenced to 60 months in prison. Def.'s Mot. at 3; Pl.'s Opp'n at 5–6. The defendant redacted home telephone and pager numbers under Exemption 7(C) from one page of this document to protect the personal privacy of certain government attorneys.[3] *Id.*

On May 6, 2002, the plaintiff filed his complaint requesting that the court order the defendant to release the three documents in their entirety. Compl. at 1–3. Subsequently, on August 16, 2002, the defendant filed a motion for summary judgment. In his opposition, the plaintiff contends for the first time that the defendant failed to release three additional documents, namely: (1) a three-page memorandum dated December 24, 1996 from EOUSA to the Attorney General concerning the un-recusal of the United States Attorney's Office for the Southern District of Florida from the plaintiff's criminal investigation and prosecution ("first additional document"); (2) a one-page note from Associate Deputy Attorney General David Margolis ("second additional document"); and (3) the third page of the previously-mentioned January 1997 memorandum, reflecting Mr. Margolis' approval of the un-recusal on January 11, 1997 ("third additional

document"). Pl.'s Opp'n Ex. A ¶ 4; Def.'s Reply Ex. 1 ¶ 14.

On October 28, 2002, the defendant filed its reply, noting that it had processed these three additional documents for withholding or release to the plaintiff and attaching them as exhibits thereto. Def.'s Reply Exs. 1, 3–4. With regard to the first additional document, as it did with the first document (i.e., the January 1997 memorandum), the defendant withheld part of one page and all of two pages of the first additional document pursuant to Exemption 5. *Id.* at 4–6. The defendant released the second additional document in full. *Id.* With regard to the third additional document, the defendant withheld it in part pursuant to Exemption 5. *Id.*

Because the defendant filed these additional documents with its reply, the court permitted the plaintiff to file a sur-reply in response to the additional documents but instructed the plaintiff to respond only to those new points raised in the defendant's reply brief. Order dated Nov. 13, 2002. The plaintiff filed a sur-reply on November 25, 2002.[4] He did not, however, address the additional documents. Instead, he expounded on previous arguments raised in his opposition.[5] Pl.'s Sur-reply 3–5.

The court now analyzes the legal arguments in favor of and opposing summary judgment. Specifically, the court address-

---

emption 7(C) is proper. Pl.'s Opp'n at 6; Def.'s Mot. at 2–3.

**3.** As with the second document, the plaintiff concedes that the application of Exemption 7(C) to the third document is proper because the defendant redacted only the home telephone or pager numbers of the government attorneys involved. Pl.'s Opp'n at 6; Def.'s Mot. at 2–3.

**4.** Although the plaintiff filed his sur-reply after the deadline set by the court, and without requesting leave to do so, the court accepts the plaintiff's sur-reply. *See generally Sparrow v. United Air Lines Inc.,* 216 F.3d 1111

(D.C.Cir.2000) (endorsing the view that courts should relax procedural requirements for *pro se* litigants). The court notes that allowing the plaintiff to late-file the sur-reply does not prejudice the defendant.

**5.** Presumably as an added bonus, the plaintiff's sur-reply contains an informative background section describing the plaintiff's political history as a Florida state senator and representative. Pl.'s Sur-reply at 1–3. The information provided in the sur-reply's background section appears to be irrelevant to the case and issues at hand.

es whether the defendant performed its search for the plaintiff's requested information in bad faith, whether the defendant appropriately claimed Exemption 5 deliberative-process and attorney work-product privileges to withhold certain information from the plaintiff, and whether the defendant could have segregated the exempt information from the non-exempt information of each withheld document.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in a FOIA Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

 FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al–Fayed v. CIA*, 254 F.3d 300, 305 (D.C.Cir.2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C.Cir.1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973) (fashioning what is now commonly referred to as a "*Vaughn* index").

 The court may grant summary judgment to an agency on the basis of its affidavits if they:

"[ (a) ] describe the documents and the justifications for nondisclosure with reasonably specific detail, [ (b) ] demonstrate that the information withheld logically falls within the claimed exemption, and [ (c) ] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Services, Inc. v. Sec. & Exch. Comm'n*, 926

F.2d 1197, 1200 (D.C.Cir.1991) (citing *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

## B. The Court Determines That the Defendant's Search for Documents Was Not Done in Bad Faith

■ While the plaintiff concedes that the defendant conducted a reasonable search in uncovering documents relevant to his request, the plaintiff contends that the defendant's belated release of the three additional documents demonstrates the defendant's bad faith, requiring a denial of the defendant's summary-judgment motion. Pl.'s Opp'n at 5. The defendant, however, argues that its release of the additional documents initially withheld from the plaintiff is not evidence of bad faith. Def.'s Reply at 2. Furthermore, the defendant maintains that as a result of its initial oversight, it conducted additional searches going above and beyond what the law requires of the agency. Def.'s Reply at 2–3 (citing *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983) (stating that an agency is required only to undertake a search that is "reasonably calculated to uncover all relevant documents")).

■ An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Oglesby v. Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Campbell v. Dep't of Justice,* 164 F.3d 20, 27 (D.C.Cir.1998). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.D.C.1996) (Sporkin, J.); *see also Fitzgibbon v. Secret Service,* 747 F.Supp. 51, 54 (D.D.C.1990) (Greene, J.); *Meeropol v. Meese,* 790 F.2d 942, 952–

53 (D.C.Cir.1986). The agency need not search every record in the system or conduct a perfect search. *SafeCard,* 926 F.2d at 1201; *Meeropol,* 790 F.2d at 952, 956. To demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Weisberg,* 705 F.2d at 1351; *Oglesby,* 920 F.2d at 68.

■ Moreover, under settled law of this circuit, the subsequent disclosure of documents initially withheld does not qualify as evidence of "bad faith." *Public Citizen v. Dep't of State,* 276 F.3d 634, 645 (D.C.Cir. 2002) (declining to find subsequent disclosure as evidence of bad faith because effectively penalizing an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure).

Here, the defendant's supporting affidavits demonstrate that its search was adequate and conducted in good faith using methods reasonably expected to produce the plaintiff's requested information. *Oglesby,* 920 F.2d at 68; *Campbell,* 164 F.3d at 27. The defendant performed several searches using the search terms "Gutman" and "recusal" in three different databases to capture all documents from 1982 to the present. Def.'s Reply Ex. 1. Moreover, as a cautionary step, the defendant conducted additional, expanded searches. Def.'s Reply at 4–6. Finally, the defendant's unearthing of the documents previously withheld from the plaintiff does not constitute bad faith under this circuit's case law. *Id.; Public Citizen,* 276 F.3d at 645.

Accordingly, the court believes that the defendant conducted adequate searches reasonably expected to produce information responsive to the plaintiff's FOIA request. *Weisberg,* 705 F.2d at 1351; *Oglesby,* 920 F.2d at 68. The court therefore is

not persuaded by the plaintiff's bad-faith accusations and concludes that the defendant did not act in bad faith. *Id.; Public Citizen,* 276 F.3d at 645.

## C. The Court Concludes That the Defendant Properly Withheld Information Pursuant to Exemption 5

 Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1184 (D.C.Cir.1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin,* 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 800, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege. *Sears,* 421 U.S. at 149, 95 S.Ct. 1504. At issue in this case are the deliberative-process and the attorney work-product privileges invoked by the defendant.

### 1. Deliberative–Process Privilege

 The general purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears,* 421 U.S. at 151, 95 S.Ct. 1504. The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action. *Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. Dep't of Justice,* 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc). In essence, the privilege protects the "decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears,* 421 U.S. at 150, 95 S.Ct. 1504 (internal quotations omitted). Thus, the deliberative-process ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992).

 To invoke the deliberate-process privilege, the defendant must establish two prerequisites. *Id.* First, the communication must be "predecisional;" in other words, it must be "antecedent to the adoption of an agency policy." *Jordan,* 591 F.2d at 774; *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C.Cir.1991). In determining whether a document is predecisional, an agency does not necessarily have to point specifically to an agency's final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States,* 617 F.2d at 868. In other words, as long as a document is generated as part of such a continuing process of agency decision-making, the deliberative-process protections of Ex-

emption 5 may be applicable. *Id.; Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C.Cir.2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

■ Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 484 F.2d at 823–24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C.Cir.1987)).

■ To demonstrate the predecisional and deliberative nature of the withheld information, the defendant provided a *Vaughn* index describing each withheld document and explaining each exemption's relevance. *Summers*, 140 F.3d at 1080. The defendant invokes the protection afforded by the deliberative-process privilege to account for the withheld portions of the fist document (i.e., the January 1997 memorandum), the first additional document (i.e., the December 1996 memorandum), and the third additional document (i.e., the third page of the January 1997 memorandum). Def.'s *Vaughn* Index at 1; Def.'s Reply Ex. 1. ¶ 12.

After perusing the defendant's supporting affidavits and *Vaughn* index, the court is persuaded that the withheld portions of all three documents comprise predecisional and deliberative information. Def.'s Mot. Ex. A. ¶ 18; Def.'s *Vaughn* Index at 1; Def.'s Reply Ex. 1. ¶¶ 14–17.

The defendant meets the first prerequisite for claiming the deliberative-process privilege with respect to all three documents by demonstrating that the documents are predecisional. As in *National Association of Home Builders*, the defendant here prepared all three documents to assist the Deputy Attorney General's decision regarding the government's un-recusal from the plaintiff's criminal investigation. Def.'s Mot at 2, 11–12. On January 11, 1997, the Deputy Attorney General made a final decision on this matter by approving the January 1997 memorandum. Pl.'s Opp'n Ex. A ¶ 4; Def.'s Reply Ex. 1. ¶ 14. As such, all three documents are predecisional because the defendant generated them as part of the continuing decision-making process. *Coastal States*, 617 F.2d at 868.

The defendant also satisfies the second prerequisite for the deliberative-process privilege by establishing that all three documents were part of a deliberative process because they contain recommendations and requests for approval of proposed actions. *Coastal States*, 617 F.2d at 866 (holding that the deliberative-process privilege covers recommendations, proposals, suggestions and other subjective documents that reflect the personal opinions of the writer rather than the policy of the agency). All three documents recommend that the Deputy Attorney General approve the government's un-recusal from the plaintiff's criminal investigation. Def.'s Reply at 1. In essence, all three documents reflect the give-and-take of the consultative process. *Petroleum*, 976 F.2d at 1434. In accord with this line of reasoning, the court recognizes that all three documents represent precisely the kind of information Exemption 5 was designed to protect, and that its disclosure could potentially "stifle honest and frank communication" within the defendant-agency. *Coastal States*, 617 F.2d at 866. Therefore, the court grants

the defendant summary judgment as to the three documents for which the defendant invokes the deliberative-process privilege. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### 2. Attorney Work–Product Privilege

 The second privilege under Exemption 5 is the attorney work-product privilege, which protects documents and other memoranda prepared by an attorney in contemplation of litigation. FED. R. CIV. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The privilege encompasses "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* The purpose of the privilege is to protect the adversarial trial process by insulating the attorney's preparation from scrutiny. *Jordan*, 591 F.2d at 775. Accordingly, this privilege ordinarily does not attach until at least "some articulable claim, likely to lead to litigation," has arisen. *Coastal States*, 617 F.2d at 865. The D.C. Circuit has explained that this privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1208 (D.C.Cir.1992). Moreover, the attorney work-product privilege protects both factual and deliberative materials. *Martin*, 819 F.2d at 1189.

 The defendant asserts the attorney work-product privilege as grounds for withholding portions of the second document. Def.'s Mot. at 11–12. As noted, the second document is an urgent report advising the Attorney General that the government had appealed the magistrate judge's bond determination releasing the plaintiff. Def.'s Mot. at 2, 11–12; Pl.'s Opp'n at 5–8. This document contains the defendant's reasoning in support of an appeal of the bond determination. *Vaughn*

Index at 2. The plaintiff argues that the defendant improperly invokes the attorney work-product privilege because pending litigation no longer exists as to the plaintiff's criminal offense, and because the plaintiff has already been convicted and is serving a term of incarceration. Pl.'s Opp'n at 7.

 In *Federal Trade Commission v. Grolier*, the Supreme Court explicitly rejected contentions similar to those made by the plaintiff here by observing that under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared. *Fed. Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 28, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). The Court reasoned that the attorney work-product privilege may be invoked regardless of whether the plaintiff is serving a term of incarceration. *Id.* On this point, Guideline Number 15 of the Special Masters' Guidelines for the Resolution of Privilege Claims provides additional guidance by defining the term "materials prepared in anticipation of litigation or for trial" as including "a proceeding in a court or administrative tribunal in which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation." *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 604 (D.D.C.1979) (Greene, J.). Further, "in anticipation" means any time after initiation of the proceeding. *Id.* The privilege applies to past litigation as well. *Id.* (citations omitted).

Given the sweeping definition of litigation, this case easily falls within its contours. Indeed, the second document clearly is prepared in anticipation of litigation because it provides information justifying why the defendant sought review of the Magistrate Judge's bond determination. Def.'s *Vaughn* Index at 2. Seeking review

of a court's decision falls within the definition of litigation. *Am. Tel. & Tel. Co.*, 86 F.R.D. at 627. Accordingly, the court concludes that the defendant properly withheld portions of the second document in accordance with the attorney work-product privilege and therefore grants the defendant summary judgment as to the second document as well. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## D. The Court Determines That the Defendant Has Disclosed All Reasonably Segregable Material

The defendant maintains that it properly evaluated the segregability of all documents and released as much non-exempt information as possible. Def.'s Mot. at 13. The plaintiff, however, contends that the defendant failed to segregate the exempt information from the non-exempt information of each document withheld either in full or in part pursuant to Exemptions 5 and 7(C).[6] Pl.'s Opp'n at 8–9. Specifically, the plaintiff claims that the defendant's supporting affidavit of EOUSA attorney James S. Carroll III contains insufficient, conclusory statements on the segregability of the documents. *Id.*

▆▆▆▆ FOIA mandates that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). By 1977, it had "long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C.Cir.

1977). The D.C. Circuit has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C.Cir.1984). In fact, the segregability requirement is so essential to a FOIA inquiry that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (D.C.Cir.1992) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir.1979)).

▆▆▆▆ To demonstrate that the withholding agency has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir.1987) (internal quotations omitted). The agency, however, is not required to provide so much detail that the exempt material effectively would be disclosed. *Mead Data*, 566 F.2d at 261. Furthermore, conclusory language in agency declarations that do not provide a specific basis for segregability findings by a district court may be found inadequate. *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F.Supp.2d 295, 301 (D.D.C.1999) (Kollar-Kotelly, J.). The D.C. Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of 'conclusory assertions,'" noted that "it is enough that where no factual support is provided for an

---

**6.** The plaintiff asserts that the names of the government attorneys and other Department of Justice personnel are segregable and should be disclosed under Exemption 7(C). Pl.'s Opp'n at 8–9. The defendant, however, maintains that it appropriately disclosed all those names and only withheld the home telephone and pager numbers pursuant to Exemption 7(C). Because the defendant satisfied the plaintiff's request, the court will not address segregability relative to the documents withheld in part or in full under Exemption 7(C).

essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 585 (D.C.Cir.1987).

In a recent D.C. Circuit case that presents circumstances parallel to those in the instant case, a plaintiff sought the release of documents pertaining to his criminal conviction withheld by EOUSA. *Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 773 (D.C.Cir.2002). The D.C. Circuit held that EOUSA satisfied the segregability requirement by providing the plaintiff with a *Vaughn* index, a supplemental affidavit adequately describing each withheld document, the exemption under which each document was withheld, and an explanation for the exemption's relevance. *Johnson,* 310 F.3d at 776. The supplemental affidavit in that case explained that the affiant-attorney personally conducted a line-by-line review of each document withheld in full and determined that "no documents contained releasable information which could be reasonably segregated from the nonreleasable portions." *Id.* In other words, the court found that the combination of the *Vaughn* index and the affidavit was sufficient to fulfill EOUSA's obligation to show with "'reasonable specificity'" why a document cannot be further segregated. *Id.* (citing *Armstrong v. Executive Office of the President,* 97 F.3d 575, 578–79 (D.C.Cir.1996)).

■ As in *Johnson,* the plaintiff in the present case submitted a FOIA request to EOUSA, seeking the release of all documents pertaining to his criminal conviction. Compl. ¶ 2 *and* Def.'s Mot. at 1–2. Subsequently, the defendant provided a *Vaughn* index and affidavits, describing all documents it had located pursuant to the plaintiff's FOIA request. Def.'s *Vaughn* Index at 1–3; Def.'s Mot. Exs. A, B; Def.'s Reply Exs. 1–2. As was the case in *Johnson,* the defendant's *Vaughn* index here details

each document's issue date, subject matter, authorship, the intended recipient, the exemption under which any pages are withheld, and an explanation as to why the exemption applies to the document. Def.'s *Vaughn* Index at 1–3. Indeed, the defendant does not merely parrot FOIA's statutory language, but rather incorporates facts of the withheld documents into their description in both the defendant's *Vaughn* index and declarations. *Animal Legal Def. Fund,* 44 F.Supp.2d at 301 (holding that mere parroting of FOIA's statutory language without adding factual material is insufficient for segregability purposes); *Senate of Puerto Rico,* 823 F.2d at 585.

Similar to the EOUSA affidavit in *Johnson,* the defendant herein provides two affidavits in response to the plaintiff's FOIA request that adequately support non-segregability. Def.'s Mot. Exs. A, B; Def.'s Reply Exs. 1–2. The first affidavit avows that Mr. Carroll evaluated each page of every document for segregability and, after making the necessary deletions or excisions, released them accordingly. Def.'s Mot. Ex. A ¶ 18; Def.'s Reply Ex. 2 ¶ 7. Likewise, the second affidavit by OIP Deputy Director Melanie Ann Pustay states that OIP released all reasonably segregable, nonexempt information contained in the requested documents. Def.'s Reply Ex. 1 ¶ 18. Both affidavits describe each document reviewed, the exemptions on which the defendant based its withholdings, and the reasons for which the defendant relies on the exemptions. Def.'s Mot. Exs. A, B.; Def.'s Reply Exs. 1–2. In line with the D.C. Circuit's decision in *Johnson,* the court similarly concludes that here, the defendant's *Vaughn* index and supportive declarations are sufficient to fulfill the agency's obligation to provide "detailed justification" as to why the agency cannot further segregate the documents. *Johnson,* 310 F.3d at 776 (quoting

*Mead Data,* 566 F.2d at 261). Accordingly, the court is satisfied that the defendant has disclosed all reasonably segregable material. *King,* 830 F.2d at 224.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of January 2003.

## *ORDER*

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued, it is this _____ day of January 2003,

**ORDERED** that the defendant's motion for summary judgment is **GRANTED.**

**SO ORDERED.**