JUDICIAL WATCH, INC., Plaintiff,

v.

DEPARTMENT OF THE ARMY, Defendant.

No. CIV.A. 04–301(RMU).

United States District Court, District of Columbia.

May 31, 2006.

Jonathan Eli Zimmerman, Paul A. Diller, U.S. Department of Justice, Karen Louise Manos, Elizabeth B. McCallum, Howrey Simon Arnold & White, LLP, Washington, DC, for Defendant.

Meredith Leigh Diliberto, Paul J. Orfanedes, Jason B. Aldrich, Judicial Watch, Inc., Washington, DC, for Plaintiff.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDERING THE DEFENDANT TO PRODUCE CERTAIN DOCUMENTS

### I. INTRODUCTION

The plaintiff, Judicial Watch, Inc., is a nonprofit group seeking documents from

the Department of the Army, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The defendant moves for summary judgment, claiming that the documents withheld are properly classified under Exemption 5 of FOIA. Because the plaintiff demonstrated inaccuracies in the defendant's FOIA assertions, the court previously deferred ruling on the defendant's motion for summary judgment and ordered the government to produce those documents to the court for *in camera* review. Mem. Op. (Nov. 17, 2005) at 11. Having conducted this review, the court rules that the defendant properly classified the majority of these documents. The court also rules, however, that certain documents fall outside Exemption 5 of FOIA. Accordingly, the court orders the defendant to produce these documents.[1] Additionally, the defendant failed to produce six documents as part of its *in camera* submission.[2] The court orders the defendant to produce these documents for *in camera* review within 15 days of this order and to show cause why it failed to produce these documents as part of its first *in camera* production.

## II. BACKGROUND

After the United States led invasion of Iraq in March 2003, the Army awarded a no-bid oil well firefighting contract to Kellogg, Brown & Root ("KBR"), a Halliburton Co. subsidiary. Vice–President Richard Cheney previously served as Halliburton's Chief Executive Officer and Chairman of the Board. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n")

at 1. The plaintiff theorizes that the Vice–President's past associations with Halliburton present more than a curious coincidence—that they "raise concerns about the appearance of a conflict of interest or favoritism, particularly since the contract was awarded to KBR without a bidding process and because the contract was not announced to the public until after it had been approved." *Id.* at 1–2 (citing Michael Shanyerson, *Oh! What a Lucrative War*, VANITY FAIR, April 2005, at 138). In pursuing additional information from the government to corroborate its theory, the plaintiff sent two FOIA requests to the defendant. First, on April 6, 2003, the plaintiff sought information pertaining to

> the decision of the U.S. Army to grant an Iraqi oil well firefighting contract to [KBR] ... [t]he decision to grant the contract to KBR without a bidding process ... [t]he decision to request KBR to draft and/or "draw up" contingency plans for existing oil well fires in Iraq ... [and t]he time limit(s) and dollar limit(s) of the contract.

Compl. ¶ 5. Second, on June 16, 2003, the plaintiff sought information pertaining to

> the decision of the U.S. Army to grant a contract to [KBR] to restart Iraq's oil production leading up to and after the 2003 Iraq war (January 1, 2003 through June 15th, 2003), including but not limited to: Contract costs, deadlines, compensation, spending limits, and bonus scales[, and] Monthly cost overruns, costs per month, itemized reports of all activities billed to the U.S. Government concerning KBR's (or any related sub-

---

1. The court orders the defendant to produce the following documents because they do not implicate the deliberative-process privilege: CE523–524, CE555, CE580–585, CE3720, CE2539–2588, CE6838, CE6871–6873, and CE6899. The court orders the defendant to produce the following documents because they involve communications outside of the

agency: CE484–485, CE486–487, CE567–576, CE5242–5244, CE5245–5246, and CE6610–6619.

2. The documents are: CE545, CE4431, CE5352–5385, CE5554, CE5919, and CE6755–6756.

sidiary including the parent company of Halliburton) activities in Iraq between February 1st, 2003 to June 16th, 2003 ... [and] all information or correspondence related to the replacement of KBR's original contract estimated to happen in or about August 2003.

*Id.* ¶ 14. Having received no response from the defendant by February of the following year, the plaintiff filed the instant lawsuit. *See id.* ¶ 5. On March 19, April 19,[3] and December 13, 2004, the defendant provided the plaintiff with documents in response to its request. Pl.'s Opp'n at 4; Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 4. The defendant withheld 1,312 pages of documents in full from production and withheld part of 4,819 pages of documents.[4] Pl.'s Mot. at 4.

Pursuant to a joint stipulation reached by the parties in April 2005, the plaintiff has limited its claims to documents withheld under Exemptions 5 and 6 of FOIA. As such, the defendant limited its motion for summary judgment to information withheld pursuant to these two exemptions.

On November 17, 2005, the court granted the defendant's motion for summary judgment as to information withheld pursuant to Exemption 6. Mem. Op. (Nov. 17, 2005) at 15. Because of inaccuracies in the defendant's FOIA assertions, the court further ordered the defendant to produce the documents withheld pursuant to Exemption 5 for *in camera* review. *Id.* at 11. The court now turns to the defendant's

motion for summary judgment as to the documents withheld pursuant to Exemption 5.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in FOIA Proceeding

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could estab-

---

3. The defendant represents that the second date of document production was April 29, 2004, not April 19, 2004, as the plaintiff claims. This discrepancy, however, does not bear upon the issues presently before the court.

4. The parties dispute the breadth of documents currently at issue. Def.'s Mot. at 10 n.6; Pl.'s Opp'n at 5 n.3. According to the defendant, the plaintiff previously indicated that it

would challenge the withholding of three specific documents under Exemption 5 of FOIA. Def.'s Mot. at 10 n.6. The plaintiff disputes this contention. Pl.'s Opp'n at 5 n.3. As the court is addressing the defendant's motion for summary judgment, the court will construe this factual dispute in the plaintiff's favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

lish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

■ FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al–Fayed v. CIA*, 254 F.3d 300, 305 (D.C.Cir.2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C.Cir.1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "Vaughn index").

■ The court may grant summary judgment to an agency on the basis of its affidavits if they:

> [ (a) ] describe the documents and the justifications for nondisclosure with reasonably specific detail, [ (b) ] demonstrate that the information withheld logically falls within the claimed exemption, and [ (c) ] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

**B. The Court Denies the Defendant's Motion for Summary Judgment as to Certain Documents Withheld under Exemption 5**

**1. Legal Standard for Exemption 5**

■ Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C.Cir.1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin*, 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege. *Sears*, 421 U.S. at 149, 95 S.Ct. 1504. At issue in this case is the deliberative-process privilege and the attorney-client privilege.

■ The general purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions."

*Sears,* 421 U.S. at 151, 95 S.Ct. 1504. The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not, in fact, ultimately the grounds for an agency's action. *Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. Dep't of Justice,* 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc). In essence, the privilege protects the "decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears,* 421 U.S. at 150, 95 S.Ct. 1504 (internal quotations omitted). Thus, the deliberative-process ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992).

■■■ To invoke the deliberate-process privilege, the defendant must establish two prerequisites. *Id.* First, the communication must be "predecisional;" in other words, it must be "antecedent to the adoption of an agency policy." *Jordan,* 591 F.2d at 774; *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C.Cir. 1991). In determining whether a document is predecisional, an agency does not necessarily have to point specifically to a final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States,* 617 F.2d at 868. In other words,

as long as a document is generated as part of such a continuing process of agency decision-making, the deliberative-process protections of Exemption 5 may be applicable. *Id.; Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 39 (D.C.Cir.2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

■■■ Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn,* 484 F.2d at 823–24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports,* 926 F.2d at 1195 (quoting *Dudman Commc'n Corp. v. Dep't of Air Force,* 815 F.2d 1565, 1567–68 (D.C.Cir.1987)).

■■■ The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc.,* 566 F.2d at 252. The rationale underlying the privilege is that lawyers will be best able to advocate and offer advice if they are "fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

■■■ The attorney-client privilege is not limited to the context of litigation. *See e.g., Mead Data Cent., Inc.,* 566 F.2d at 252–53; *Crooker v. Internal Revenue Serv.,* No. 94–0755, 1995 WL 430605, at *7 (D.D.C. April 27, 1995). Although it principally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinions given by an attorney to his client based on, and thus reflecting,

those facts as well as communications between attorneys that reflect client-supplied information. *See Coastal States,* 617 F.2d at 863 (finding that courts can infer confidentiality when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests"). The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees. *Upjohn Co.,* 449 U.S. at 392–97, 101 S.Ct. 677.

### 2. The Court Orders the Defendant to Produce Non–Deliberative Documents

After conducting its *in camera* review, the court determines that certain documents fall outside of Exemption 5 because they are neither predecisional nor deliberative and, therefore, do not implicate the deliberative-process privilege. These eight documents are: CE523–524, CE555, CE580–585, CE3720, CE2539–2588, CE6838, CE6871–6873, and CE6899. Because the government did not meet its burden of showing that these documents fall within Exemption 5, it must disclose them to the plaintiff. *Al–Fayed,* 254 F.3d at 305; *Summers,* 140 F.3d at 1080.

 As to documents CE523–524, CE555, CE3720, CE6838, CE6871–6873, and CE6899, all or portions of them appear to be neither predecisional nor deliberative. When conducting an *in camera* review, the court is at a disadvantage because it reviews the documents outside the context in which they were generated. *See Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 775 (D.C.Cir. 2002) (recognizing that to meet its burden, the government may need to "explain the exemption's relevance" in addition to simply "stat[ing] which exemption the agency claims for each withheld document"). It is

imperative, therefore, that the government provide ample justification in their Vaughn index to assist the court in understanding why the disputed documents properly fit within a FOIA exemption. *Id.* In this case, the government has provided an inadequate explanation to allow this court to understand its classification of these documents. For example, the only explanation given for the nondisclosure of CE523–524 is "5 (DP)—Opinions and Recommendations." Def.'s Mot. Ex. 2 at 8. On its face, however, this document contains no inherent indications that it contains "opinions and recommendations." FOIA requires broad disclosure and it is the government's burden to justify nondisclosure. *Al–Fayed,* 254 F.3d at 305; *Summers,* 140 F.3d at 1080. Because these documents do not appear to be predecisional or deliberative, the government has not met its burden.

 With regard to documents CE6838 and CE6899, the government also attempts to justify nondisclosure pursuant to the attorney-client privilege. Def.'s Mot. Ex. 2 at 96, 98. The attorney-client privilege, however, does not exempt a document from disclosure simply because the communication involves the government's counsel. *See Upjohn Co.,* 449 U.S. at 396, 101 S.Ct. 677 (noting that a client "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney") (quoting *Philadelphia v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (D.Pa.1962)). Rather, the communication with counsel must concern a legal matter for which the client has sought professional advice. *See Coastal States,* 617 F.2d at 862 (noting that, according to the Supreme Court, the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent

the privilege") (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). In this case, documents CE6837 and CE6899 do not contain legal advice from a lawyer to client. Accordingly, they are not exempt from disclosure and must be released to the plaintiff.

■ As to document CE580–585, the government contends that it is a draft. Def.'s Mot. Ex. 2 at 10. Although the government's Vaughn index notes that this is a draft, there is no other indication that this characterization is correct. The document itself indicates that it is a "Memorandum For Record" and is signed by a military official. There are no markings on the document indicating that it is predicisional or a draft. Indeed, the document does not contain any marks or corrections of any kind. Additionally, there is no cover sheet explaining that it is a draft or requesting that it be reviewed or corrected. The government, therefore, fails to meet its burden and, accordingly, it must disclose this document.[5]

■ The government asserts that document CE2539–2588 contains deliberative-process information. This document, however, fails to meet the prerequisites to qualify for the deliberative-process privilege. The document contains a "Briefing Cover Sheet and Briefing Materials." Def.'s Mot. Ex. 2 at 43. The cover sheet states that the purpose of this document is to serve as an update on current status. Finally, the cover sheet lists that no further actions are required, indicating that this document is not a draft but the final material used in a briefing. To support nondisclosure, the government's Vaughn index simply states that this document is exempt because it contains "Opinions and Recommendations." The court cannot agree.

The cover sheet contents lead the court to conclude that document CE 2539–2588 was not prepared to assist an agency in arriving at a decision. Rather, it appears that it was prepared to communicate the agency decision and support a decision already made. This is a perfect example of a document that is not predecisional. Also, this document cannot be considered deliberative. The purpose of the document was not to express recommendations and opinions, but to update another party on the current status of a decision already made. Once again, the government has failed to meet its burden of explaining how these documents contain the prerequisites necessary to fall under the deliberative-process privilege. *Al–Fayed*, 254 F.3d at 305; *Summers*, 140 F.3d at 1080.

### 3. The Court Orders the Defendant to Produce Documents That are Not Inter–Agency or Intra–Agency

■ Certain documents that the government withheld claiming Exemption 5 fall completely outside of the exemption because they involve communications that are not inter-agency or intra-agency. 5 U.S.C. § 552(b)(5). These documents are: CE484–485, CE486–487, CE567–576, CE5242–5244, CE5245–5246, and CE6610–6619. These six documents involve email communications between government agencies and a KBR employee using a Halliburton email address.

■ To fall under Exemption 5, the communication must be "inter-agency or intra-agency." 5 U.S.C. § 552(b)(5). "With exceptions not relevant here, 'agency' means 'each authority of the Government of the United States,' § 551(1), and

---

**5.** If the government still asserts that this is a draft document, they may provide additional supporting information to the court for review. Otherwise, the government must disclose this document.

'includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government ..., or any independent regulatory agency,' § 552(f)." *Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). The Supreme Court has acknowledged that the exemption can extend to "communications between Government agencies and outside consultants hired by them." *Id.* at 10, 121 S.Ct. 1060. This extension, however, only applies when the "consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it." *Id.* at 11, 121 S.Ct. 1060. The consultant's only obligation must be "to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee[.]" *Id.*

Although the court does not have the benefit of placing these documents in context, a review shows no indication that nondisclosure is justified. KBR is clearly not an agency of the government, and the defendant did not hire KBR to help with the deliberations of the agency. Rather, KBR represented its own interests and, in exchange, was awarded a lucrative contract from the government. In *Klamath,* the Supreme Court recognized the difference between consultants who act like the agency's own personnel and those who communicate with an agency "with their own, albeit entirely legitimate, interests in mind." 532 U.S. at 12, 121 S.Ct. 1060; *see Ctr. for Auto Safety v. Dep't of Justice,* 576 F.Supp. 739, 745 (D.D.C.1983) (holding that documents fell outside of Exemption 5 when they were not prepared for a purely internal governmental matter in which the agency was simply seeking the advice of disinterested consultants). Here, KBR is acting as a "self-advocate[ ] at the expense of others seeking benefits inadequate to satisfy everyone." [6] *Klamath,* 532 U.S. at 12, 121 S.Ct. 1060. The communications between the government and KBR, therefore, must be disclosed under FOIA. *See Leadership Conference on Civil Rights v. Gonzales,* 404 F.Supp.2d 246, 255 (D.D.C. 2005) (deciding that documents made available to individuals not associated with the agency "cannot be 'inter-agency or intra-agency' communication, and thus do not satisfy the requirements for application of the deliberative process privilege of Exemption 5"); *see also Ctr. for Auto Safety,* 576 F.Supp. at 749 (stating that documents which may have fallen within the deliberative-process privilege lose their predeci-

---

**6.** According to the Department of Justice, *Klamath* requires a two-part test when deciding if a consultant falls outside of Exemption 5 and whether disclosure is mandated. *Freedom of Information Act Guide & Privacy Act Overview* 362–65 (U.S. Dep't of Justice ed., May 2004). As the Department of Justice sees it, a consultant falls outside of Exemption 5 only if 1) the consultant has an interest in the outcome of the decision making process *and* 2) other existing parties have competing interests in benefits inadequate to satisfy everyone. This interpretation misstates the Supreme Court's holding in *Klamath* because the Supreme Court never identified a two part test. Rather, it identified two factors that influenced its analysis. Judge Friedman's well-reasoned opinion provides a more accurate interpretation of *Klamath. Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative,* 237 F.Supp.2d 17 (D.D.C.2002). In *Center for International Environmental Law,* Judge Friedman correctly observed that the Supreme Court did not decide if the first factor, in and of itself, is enough to exempt disclosure but rather, decided that where both factors are present a party cannot qualify as a consultant for Exemption 5 purposes. *Id.,* 237 F.Supp.2d. at 25. Regardless of which interpretation the court follows, the facts of this case are analogous to *Klamath* and disclosure would be mandated under either interpretation.

sional character and become final views of the agency when the agency shared those documents with their adversaries in litigation).

The documents at issue here are correspondence between the government and KBR, a public company contractor. The Vaughn index and the defendant's submissions provide no justification as to why these documents fall within Exemption 5. The government did not meet its burden of demonstrating why Exemption 5 should apply to these non-agency emails especially given FOIA's mandate for broad disclosure. *Vaughn*, 484 F.2d at 823. Accordingly, the defendant must disclose these six documents to the plaintiff.

## C. The Court Defers Ruling on the Defendant's Motion for Summary Judgment as to Documents that were not Produced for *In Camera* Review

The government did not produce the following documents for *in camera* review: CE545, CE4431, CE5352–5385, CE5554, CE5919, and CE6755–6756. The government gave no explanation as to why these documents were not produced in contravention of this court's order. It is unclear whether the government failed to produce these documents because they are no longer in dispute or if there was simply an oversight in producing them. The court, therefore, defers ruling on the matter and orders the defendant to produce these documents for *in camera* review within 15 days of this order and to show cause why it failed to produce these documents as part of its first *in camera* production.

## D. The Court Grants the Defendant's Motion for Summary Judgment as to the Remaining Documents Withheld under Exemption 5

■ After conducting an *in camera* review of the remaining documents, the court holds that they were properly classi-

fied under Exemption 5 of FOIA. An agency may meet its FOIA burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820. After conducting a review to assess the accuracy of the defendant's assertions, the court concludes that, except for those documents noted earlier, the Vaughn index was accurate and nondisclosure is justified.

## E. Notice to the Government Regarding FOIA and its Burdens

■ The court undertook an onerous *in camera* review of the defendant's documents, in large part, because of the defendant's failure to provide an accurate Vaughn index. Mem. Op. (Nov. 17, 2005) at 10–11 (holding that the discrepancies in the Vaughn index undermine the court's confidence in the accuracy of the government's assertions). In this case, the court discovered its inaccuracies, albeit rather serendipitously, through the plaintiff's astute vigilance. The court reminds the defendant that "FOIA places the burden of justifying nondisclosure on the agency seeking to withhold information, and this burden cannot be shifted to the courts by sweeping, generalized claims of exemption for documents submitted for *in camera* inspection." *Mead Data Cent., Inc.*, 566 F.2d at 260. FOIA mandates broad disclosure, and the right to withholding information constitute a narrow exception, not an exploitable rule. *Klamath*, 532 U.S. at 7–8, 121 S.Ct. 1060.

## IV. CONCLUSION

For all the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment. The court grants the plaintiff's request for

release of documents and orders the defendant to produce the following documents: CE523–524, CE555, CE580–585, CE3720, CE2539–2588, CE6838, CE6871–6873, CE6899, CE484–485, CE486–487, CE567–576, CE5242–5244, CE5245–5246, and CE6610–6619. Additionally, the defendant failed to produce the following documents for *in camera* review: CE545, CE4431, CE5352–5385, CE5554, CE5919, and CE6755–6756, and the court orders the defendant to now produce them for *in camera* review within 15 days of this order and to show cause why it failed to produce these documents as part of its first *in camera* production. For the remaining documents, the court grants the defendant's motion for summary judgment and denies the plaintiff's request for release of documents. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 31 day of May, 2006.

### ORDER

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDERING THE DEFENDANT TO PRODUCE CERTAIN DOCUMENTS

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 31st day of May, 2006, it is hereby

**ORDERED** that the defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part, and it is

**FURTHER ORDERED** that the defendant produce the following documents: CE523–524, CE555, CE580–585,[1] CE3720, CE2539–2588, CE6838, CE6871–6873, CE6899, CE484–485, CE486–487, CE567–

576, CE5242–5244, CE5245–5246, and CE6610–6619, and it is

**ORDERED** that the defendant produce the following documents to the court for *in camera* review within 15 days of this order and to show cause why it failed to produce these documents as part of its first *in camera* production: CE545, CE4431, CE5352–5385, CE5554, CE5919, and CE6755–6756.

**SO ORDERED.**

---

1. If the government still asserts that this is a draft document, they may provide additional supporting information to the court for review. Otherwise, the government must disclose this document.